IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MONICA PULLIAM,

    Plaintiff,

vs.           Case No. 09-1289-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

    Defendant.

MEMORANDUM AND ORDER

  This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

  The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On June 9, 2009, administrative law judge (ALJ) Michael A. Lehr issued his decision (R. at 12-22). Plaintiff alleges that she has been disabled since April 18, 2008 (R. at 12). Plaintiff is insured for disability insurance benefits through December 31, 2010 (R. at 12, 14). At step one, the ALJ determined that plaintiff has not performed substantial gainful activity since April 18, 2008, the alleged onset date of disability (R. at 14).

At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine at L5-S1, and of the cervical spine at C4-5; depression; anxiety; obesity; and fibromyalgia (R. at 15).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15-17).  After determining plaintiff's RFC (R. at 17), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 20).  At step five, the ALJ found that plaintiff can perform other work that exists in significant numbers in the national economy (R. at 20-21).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III.  Did the ALJ err in his step three findings?**

At step three, plaintiff has the burden of demonstrating, through medical evidence, that his/her impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively. Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

At step three, the ALJ found that plaintiff's impairments

did not meet or equal listed impairments 12.04(affective disorders) or 12.06(anxiety related disorders) (R. at 16-17). The required level of severity for 12.04 is met when the requirements of both Sections A and B are satisfied, or when the requirements of Section C is satisfied. The required level of severity for 12.06 is met when the requirements of both Sections A and B are satisfied, or when the requirement of both Sections A and C are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 507, 508).

Plaintiff argues that the evidence establishes that the Section B criteria of the two listed impairments were met (Doc. 10 at 12-15). Both listed impairment 12.04 and 12.06 have the same "paragraph B" criteria, which are:

> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 507-508, 508).

Treatment providers Dr. Tan and Stefanie Griggs filled out a psychiatric review technique form on April 10, 2009 (R. at 432-444). On that form, they opined the following:

6

Restriction of activities
                of daily living:                Moderate

                Difficulties in
                maintaining social
                functioning:                    Marked

                Difficulties in
                maintaining concentration,
                persistence, or pace:           Marked

                Episodes of Decompensation,
                Each of extended duration:      Four

(R. at 442). Plaintiff alleges that the ALJ "completely ignored" this form filled out by Dr. Tan and Stefanie Griggs (Doc. 10 at 13). Plaintiff goes on to state that "if the Court will review the decision of the ALJ, it will find that there is no mention whatsoever of the psychiatric review technique completed by Ste[f]anie Griggs and Dr. Jeremy Tan" (Doc. 10 at 13).

However, contrary to plaintiff's assertion, the ALJ stated that the record contains a report by Dr. Tan (Exhibit 16F) which finds that the plaintiff is totally disabled due to depression and anxiety (R. at 19). Exhibit 16F is the psychiatric review technique form signed by Dr. Tan and Stefanie Griggs on April 10, 2009 (R. at 432-444). The ALJ discussed the opinions on the form as follows:

> This report is not consistent with the
> medical treatment records which show that her
> symptoms improved significantly with
> treatment. As support for the report Dr. Tan
> indicates that the claimant has experienced 4
> or more episodes of decompensation. This is
> also inconsistent with the medical evidence.
> Dr. Tan does not explain the basis for his

7

> opinions and the undersigned can find none.
> Evidently, Dr. Tan was employed at Horizons
> Mental Health Center when this exhibit was
> completed. Yet, records from that office
> clearly show the moderate and then mild
> nature of claimant's mental impairments. (Ex.
> 14F.) These findings, made contemporaneously
> with therapy by claimant's therapist (who
> also signed exhibit 16F) indicate that
> exhibit 16 is not an accurate statement of
> claimant's true mental condition. Notably,
> exhibits 14F and 16F deal with the same time
> periods.

(R. at 19).

As noted by the ALJ, the form filled out by Dr. Tan contains no explanation for the opinions expressed on the form (R. at 19). The opinion of a treatment provider may be rejected if it is brief, conclusory and unsupported by medical evidence. Griner v. Astrue, 281 Fed. Appx. 797, 800 (10th Cir. June 12, 2008); Williamson v. Barnhart, 350 F.3d 1097, 1099 (10th Cir. 2003).

Furthermore, the ALJ found that the opinions by Dr. Tan on the form conflict with the treatment records showing mild and moderate mental impairments (R. at 19). Exhibit 14F, which contains the treatment records, describes plaintiff's impairment as "moderate" on January 13, February 4, and February 26, 2009 (R. at 386, 381, 379). The records further describe plaintiff's impairment as "mild" on March 17 and April 7, 2009 (R. at 377, 375). Yet, without explanation, Dr. Tan opined on April 10, 2009 (just three days after the last treatment session indicating a mild impairment) that plaintiff had marked difficulties in

8

maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace and 4 episodes of decompensation, each of extended duration (R. at 442). Thus, in light of the inconsistencies between the treatment notes and the opinions of the treatment provider, and the failure of Dr. Tan to explain his findings, the ALJ articulated a reasonable basis for discounting the opinions of Dr. Tan.

In his decision, the ALJ made the following findings:

> Restriction of activities
> of daily living:                         Moderate
>
> Difficulties in
> maintaining social
> functioning:                             Moderate
>
> Difficulties in
> maintaining concentration,
> persistence, or pace:                    Mild
>
> Episodes of Decompensation,
> Each of extended duration:               None

(R. at 16). For the first three findings, the ALJ cited to exhibits in the record in support of these findings (R. at 16).

Furthermore, Dr. Adams, in a psychiatric review technique form, set forth the following opinions:

> Restriction of activities
> of daily living:                         Mild
>
> Difficulties in
> maintaining social
> functioning:                             Moderate
>
> Difficulties in
> maintaining concentration,
> persistence, or pace:                    Moderate

```
          Episodes of Decompensation,
          Each of extended duration:     None
```

(R. at 349, 359). The ALJ indicated that he gave "significant weight" to the opinions of Dr. Adams (R. at 20). The findings of the ALJ and the opinions of Dr. Adams are identical for social functioning and episodes of decompensation. In activities of daily living, the ALJ found that plaintiff's limitations were greater than opined by Dr. Adams (moderate vs. mild), and in concentration, persistence and pace, the ALJ found that plaintiff's limitations were somewhat less than opined by Dr. Adams (mild vs. moderate). In explaining his finding of only a mild limitation in concentration, persistence or pace, the ALJ stated that plaintiff is able to read, watch TV, and drive in the community without problems (R. at 16).[1]

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm

---

[1]Even if the ALJ had followed the opinion of Dr. Adams, and found that plaintiff had a moderate limitation with maintaining concentration, persistence, or pace, such a finding, in addition to the other findings of mild or moderate limitations, would not have been sufficient to meet the B criteria of listed impairments 12.04 and 12.06.

10

if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007). The court finds that the ALJ's findings regarding the B criteria of listed impairments 12.04 and 12.06 are supported by sufficient evidence which a reasonable mind might accept as adequate to support his conclusion.

Plaintiff also takes issue with the finding of the ALJ that the C criteria of 12.04 and 12.06 are not met (Doc. 10 at 15). The C criteria of 12.04 is as follows:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years'

11

> inability to function outside a highly
> supportive living arrangement, with an
> indication of continued need for such an
> arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 508). Plaintiff argues that the evidence demonstrates repeated episodes of decompensation (Doc. 10 at 15).

First, plaintiff presents no medical opinion evidence that plaintiff's impairment meets or equals 12.04(C). Second, the ALJ found that the evidence fails to establish the presence of the C criteria (R. at 16). This finding is supported by the opinion of Dr. Adams, who stated that plaintiff's history showed no history of decompensation (R. at 359), and that the C criteria of 12.04 is not met (R. at 360). The ALJ gave "significant weight" to the opinions of Dr. Adams (R. at 20). The court finds that the ALJ's findings regarding the C criteria of listed impairment 12.04 is supported by sufficient evidence which a reasonable mind might accept as adequate to support his conclusion.

Plaintiff also argues that the C criteria of 12.06 is met in this case, but erroneously asserts that this criteria requires the showing of repeated episodes of decompensation (Doc. 10 at 15). The C criteria of 12.06 is as follows:

> Resulting in complete inability to function
> independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 508). The court finds that plaintiff has presented no evidence that plaintiff's

impairment meets 12.06(C), and there is no evidence in the record that listed impairment 12.06(C) is met in this case. Furthermore, Dr. Adams opined that the C criteria of 12.06 were not met in this case (R. at 360). Given the absence of any evidence that the C criteria of 12.06 is met in this case, plaintiff's argument is without merit.

Finally, plaintiff argues that plaintiff's impairments equal a listed impairment (Doc. 10 at 17). Medical equivalence is defined in 20 C.F.R. 404.1526(a,b)(2010 at 376). The ALJ reviewed the evidence and found that plaintiff's impairments did not meet or medically equal listed impairment 12.04 and 12.06, or any other listed impairment (R. at 15-17). Even though plaintiff has the burden of proving that his impairments meet or equal a listed impairment, plaintiff cites to no medical opinion evidence or other evidence that clearly establishes that plaintiff's impairments equal a listed impairment. The court finds that substantial evidence supports the ALJ's finding that plaintiff's impairments do not either meet or equal a listed impairment.

**IV. Did the ALJ err by ignoring the medical evidence of plaintiff's fibromyalgia?**

Plaintiff asserts that the ALJ "completely ignored" plaintiff's fibromyalgia (Doc. 10 at 17). This assertion is clearly erroneous. At step two, the ALJ listed fibromyalgia as a severe impairment having more than a minimal effect on her

13

ability to work (R. at 15). The ALJ further discussed the medical evidence of fibromyalgia as follows:

> The claimant alleges to be very limited by fibromyalgia. Dr. Malik has been treating her for this condition since at least September 27, 2006 (Ex. 2F). A review of his treatment records demonstrates that he has documented the presence of the typical tender points associated with fibromyalgia; however, when she asked him to endorse her claim for disability on October 18, 2006, he refused (Ex. 2F/7). His physical examination reports state that she has full range of motion in her joints, no joint effusions, no redness or local heat or inflammation. These findings suggest that she has the ability to do a wide range of physical activities. He told her to do the exercises he prescribed and to walk. On January 23, 2008 he encouraged her to exercise and lose weight. There is no evidence that she has been compliant with his instructions.

(R. at 18). Dr. Malik's treatment records do in fact diagnose fibromaylgia. However, on October 18, 2006, when plaintiff asked Dr. Malik to fill out a disability form, Dr. Malik stated in his notes that he requested plaintiff not to look for disability at this time (R. at 262). The court finds no clear error by the ALJ in his consideration of plaintiff's fibromyalgia.

**V. Did the ALJ err by failing to include in plaintiff's RFC any mental limitations or any limitations due to her fibromyalgia?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical

evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

Plaintiff asserts that the ALJ failed to include any mental limitations in plaintiff's RFC or in the hypothetical question to the VE (Doc. 10 at 21). However, both the RFC and the hypothetical question limited plaintiff to simple, unskilled work with only occasional contact with co-workers and no contact with the general public (R. at 17, 60). These limitations are consistent with the mental RFC findings of Dr. Adams, who opined that plaintiff was moderately limited in the ability to understand, remember and carry out detailed instructions, and was moderately limited in the ability to interact appropriately with the public and in the ability to get along with coworkers without distracting them or exhibiting behavioral extremes (R. at 345-346). In the area of concentration and persistence, Dr. Adams stated that plaintiff could not perform complex detailed work,

15

but could perform simple, unskilled work.  Dr. Adams also stated that plaintiff should have less contact with the public and coworkers (R. at 347).  The ALJ stated that he gave "significant weight" to the opinions of Dr. Adams (R. at 20).  The court finds that substantial evidence supports the mental RFC findings of the ALJ.

Plaintiff also asserts that the ALJ failed to include any physical restrictions due to plaintiff's fibromyalgia (Doc. 10 at 21).  The ALJ stated that he gave "significant weight" to the opinions of Dr. Siemsen's physical RFC assessment when making his RFC findings (R. at 19).  Dr. Siemsen's assessment expressly took into account plaintiff's fibromyalgia (R. at 365).  The ALJ's RFC findings incorporate all of the limitations contained in the physical RFC assessment by Dr. Siemsen (R. at 364-372).  The ALJ also stated that plaintiff's obesity probably limits her ability to stand, walk, and lift, and he included limitations in her RFC which took those limitations into account (R. at 18).  Plaintiff cites to no medical opinion evidence that plaintiff has additional physical limitations not included in the ALJ's RFC findings.  The court finds that the ALJ's physical RFC findings are supported by substantial evidence.

Finally, plaintiff contends that the ALJ ignored the testimony of the plaintiff with regard to physical and mental limitations (Doc. 10 at 22).  However, the ALJ discussed in some

detail plaintiff's statements and his reasons for not finding her to be fully credible (R. at 17-19). Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Keeler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Keeler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand,

17

an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The ALJ found plaintiff not fully credible based on the results of plaintiff's participation in a vocational workshop, statements to healthcare professionals suggesting that the main obstacle to her employment is her unwillingness to work and not her impairments, the results of a psychological assessment by Dr. Kohrs, and inconsistent statements regarding her limitations. The ALJ stated that given her lack of credibility and her apparent attempts to exaggerate some of her symptoms, the ALJ gave less weight to her subjective descriptions of her limitations and gave greater weight to the objective medical evidence (R. at 18). The ALJ stated that there is no convincing objective medical evidence that she is as limited as she alleges or that there is a medical basis for her alleged limitations (R. at 19). The ALJ made RFC findings based on the medical opinion evidence of Dr. Adams and Dr. Siemsen.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The ALJ discussed the medical and testimonial evidence in some detail, and set forth a

number of specific reasons for discounting her credibility. The ALJ discussed the specific evidence that he relied on in determining that plaintiff's complaints were not fully credible, and linked his credibility determination to specific findings of fact fairly derived from the record. The court finds that the ALJ's credibility findings are reasonable; there is sufficient evidence which a reasonable mind might accept as adequate to support the ALJ's credibility findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 2nd day of August, 2010, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge